## CHICAGO, B. & Q. R. CO. v. BLUNK et al.
### Civ. No. 1–6.

United States District Court
S. D. Iowa, Ottumwa Division.
Sept. 27, 1951.

J. C. Pryor (of Clark, Pryor, Hale, Plock & Riley), of Burlington, Iowa, for plaintiff.

R. E. White (of Jones & White), Ottumwa, Iowa, for defendant J. C. Blunk Co.

RILEY, District Judge.

This is an action for demurrage which is claimed to have accrued against defendants as copartners, on carload shipments delivered by plaintiff to defendants, as consignee, at the Iowa Ordnance Plant, West Burlington, Iowa, after transportation there in interstate commerce over plaintiff's lines of railroad in Illinois and Iowa.

Defendants admitted delivery at the times and place alleged, the correctness of the amount claimed, but denied any liability to pay therefor, urging that such delays, if any, were due to circumstances wholly beyond their control. They allege that they were subcontractors on road construction for Silas Mason Company, prime contractor with the United States in the construction for the Government of the ordnance installation at or near Burlington, Iowa; that each car came into the possession of the United States Government at its classification yards from which both plaintiff and defendant were excluded for security reasons; that the Government failed and refused promptly to move the cars for the purpose of unloading or thereafter to return them to the classification yard for pickup by plaintiff, and that "any delay in unloading and returning to plaintiff said cars was without fault of these defendants, but was due entirely to the intervention and acts of the United States Government, either of commission or omission, and that such intervention and acts were beyond the control of the defendants entirely;" that defendants had no rail switching facilities available to accept delivery of the cars from and return to plaintiff's line and that the action and inaction of the Government constituted a "legal excuse" exempting defendants from the payment of demurrage charges prescribed by law and the rules of the Interstate Commerce Commission.

The case was submitted on Sept. 18, 1951, on an agreed stipulation of facts and following the presentation of written and oral briefs by counsel for both parties.

Findings of Fact.

1. Plaintiff is a common carrier by rail in interstate commerce. Defendants are general partners transacting business under the trade name as alleged.

2. That at the times involved, defendants were the holders of a subcontract with Silas Mason Company for road construction within the area of the Iowa Ordnance Plant, a Government installation at Burlington, Iowa, for the construction of which Silas Mason Company had a prime contract with the United States Government.

3. That the Ordnance Plant, but for the public highway between, is on plaintiff's main line, maintains its own classification yards, consisting of numerous industrial interchange tracks, so close together as to forbid unloading nor was unloading there permitted by the Government. The interchange tracks, wholly on Government prop-

erty, are a part of the 90 miles of rails thereon wholly under the control of the Government which uses its own locomotives to perform all switching operations within the military installation. Plaintiff's trackage ends at its property line about 100 feet north of the north line of the Ordnance Plant. Inbound loads were placed by plaintiff on said classification tracks; outbound loads were picked up from others and empty cars, inbound and outbound, were placed on other specific classification tracks. Aside from those movements the plaintiff was not permitted by the military authorities in charge to do any other switching, nor to enter upon any other tracks within the area. The cars in question were inbound loads of stone, asphalt and coal. When the empties were released to the plaintiff, they were placed by the Ordnance Plant switch crews on the outbound switch tracks in the classification yards. The Government did switching in the Plant only five days per week and 8 hours per day. Defendants were required by their contract to work a 6-day week.

4. During the months of September, October, November and December, 1948, plaintiff in due course of transportation received from connecting carriers shipments of stone, asphalt and oil consigned to the defendants, doing business under the trade name of J. C. Blunk Construction Company, as consignee, at the Iowa Ordnance Plant, West Burlington, Iowa, all of which had been transported by the plaintiff over its lines of railroad in Illinois and Iowa in interstate commerce. All cars in question were consigned either to "J. C. Blunk Construction Company, c/o Silas Mason Company, Iowa Ordnance Plant," or "J. C. Blunk Construction Company, c/o Iowa Ordnance Plant." The effective tariff listed the Iowa Ordnance Plant as one of the industries located at West Burlington, Iowa, a station on plaintiff's line.

5. All transportation charges except demurrage here involved were paid. All cars placed by the plaintiff on the interchange tracks were destined to the Iowa Ordnance Plant. The only way plaintiff could effect delivery of loaded cars to defendants was by placing them on the interchange tracks inside the Ordnance Plant. Plaintiff's train crews were excluded from the Ordnance Plant area except for that purpose and for picking cars up from such tracks. It was not permitted to make up trains thereon, that being done exclusively by the Government with its own power and personnel, and the cars in question did not become available to plaintiff for further use until returned by the Ordnance Plant crews to the interchange tracks. At no time did plaintiff give to the defendants written notice of the fact that plaintiff had placed inbound cars on the interchange tracks. The applicable tariffs were received in evidence by agreement

Conclusions of Law.

1. This action arises under an Act of Congress known as the Interstate Commerce Act, originally passed in 1887 and acts amendatory and supplementary thereof, 49 U.S.C.A. § 1 et seq.

2. This court has jurisdiction of the subject matter and parties.

3. Plaintiff at all times involved herein, as required by Act of Congress, had on file with the Interstate Commerce Commission, tariffs and schedules governing demurrage and car service charges on shipments of freight moving in interstate commerce.

4. Delivery of the the cars involved was made by plaintiff to defendants when the cars were placed on the classification tracks immediately within the area of the Iowa Ordnance Plant. Madsen Construction Co. v. Great Northern Ry. Co., 31 ICC 283.

5. No notice was necessary to effect a complete delivery. See B. T. Jones Tariff 4–Y–ICC 3963, Rule 4, Section C.

6. Delivery of the empty cars was not made to the plaintiff until they became available for pickup from the classification tracks immediately inside the military

222

area. Federal Roofing & Siding Co. **v.** Southern Pac. Ry. Co., 269 ICC 445.

7. The rail lines within the military area were not available to plaintiff for the purpose of making delivery on loaded cars to defendant at any other point than on the classification tracks immediately inside the Ordnance Plant property.

8. The fact that defendants were unable to deliver the empty outgoing cars to the plaintiff except through the medium of the switching facilities of the Government does not relieve defendants of the obligation to pay demurrage nor plaintiff of the requirement to collect it.

9. The Government was not the agent of the plaintiff in accepting and switching cars to the unloading sites nor for returning the same to the outgoing switch track. Southern Ry. Co. v. White, 6 Cir., 284 F. 560, 26 A.L.R. 1429.

10. Equitable considerations may not serve to justify the failure of the carrier to collect, or retention by the shipper of, any part of the lawful tariff charges. Baldwin v. Scott County Milling Co., 307 U.S. 478, 59 S.Ct. 943, 83 L.Ed. 1409. The evil of discrimination is the principal thing aimed at by the Interstate Commerce Act. Merchants Warehouse Co. v. United States, 283 U.S. 501, 512, 51 S.Ct. 505, 75 L.Ed. 1227.

Had the parties, plaintiff and defendants, agreed in a written contract that the defendants would have no liability for demurrage as to those cars which because of delays in switching operations by the Government were permitted to accumulate demurrage, the contract would have been void. Title 49, U.S.C.A. §§ 2, 41(3). There is no freedom of contract between carrier and shipper in a matter such as herein involved. Southern Ry. Co. v. White, 6 Cir., 284 F. 560, 26 A.L.R. 1429.

11. Defendant is liable to the plaintiff for the amount of demurrage, and tax claimed, a total of $3133.89 with interest and costs. Judgment will therefore be entered for the plaintiff accordingly. Defendants except.